

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6400 | **DATE** | 11/21/2001 |
| **CASE TITLE** | Margaret Robinson vs. Larry G. Massanari | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order. For the reasons stated, this Court remands the case to the ALJ to conduct further proceedings consistent with this decision.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | NOV 2 6 2001 date docketed | 32 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | 11/21/2001 date mailed notice | |
| | Copy to judge/magistrate judge. | | | |
| IS | courtroom deputy's initials | NOV 21 PM 1:57 Date/time received in central Clerk's Office | IS mailing deputy initials | |

SS-6

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARGARET ROBINSON, ) | |
| ) | |
| Plaintiff, ) | Case No. 00 C 6400 |
| ) | |
| v. ) | Magistrate Judge |
| ) | Martin C. Ashman |
| LARRY G. MASSANARI, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| Defendant. ) | |

**DOCKETED**
**NOV 2 6 2001**

## MEMORANDUM OPINION AND ORDER

Margaret Robinson seeks judicial review of the Commissioner's decision to terminate Robinson's disability insurance benefits. Robinson claims that the Administrative Law Judge (the "ALJ") committed legal error by failing to make a specific credibility finding as required by SSR 96-7p, by failing to adequately articulate his analysis of the evidence concerning Robinson's thyroid condition, by failing to obtain more recent evidence on Robinson's thyroid condition, and by relying on a hypothetical question posed to the vocational expert that did not fully set forth Robinson's impairments. Robinson also claims that substantial evidence did not support the ALJ's finding of not disabled. For the following reasons, we remand the case to the ALJ for further proceedings.[1]

### I. Procedural Background

Robinson applied for disability insurance benefits on December 20, 1995, with an onset date of July 15, 1994. Robinson claimed to be disabled due to injuries she sustained in an

---

[1] The parties have consented to have this Court conduct any and all proceedings, including the entry of final judgment. *See* 28 U.S.C. § 636(c); Local R. 73.1(b).

automobile accident. The Social Security Administration approved the claim on February 9, 1996, finding that Robinson was disabled because her left leg and ankle had not healed after twelve months. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.11 (listing as disabled an individual with a fractured femur, tibia, tarsal bone, or pelvis that did not heal within twelve months).

Approximately one year later, the Social Security Administration initiated a review of Robinson's case. On September 18, 1997, the Social Security Administration determined that Robinson was no longer eligible for benefits because the condition of her left leg and ankle had improved. Robinson appealed the decision to a hearing officer. The hearing officer, however, reached the same conclusion, namely, that the condition of Robinson's left hip and ankle had improved, and therefore her benefits should cease.

On July 29, 1998, Robinson requested a hearing before an administrative law judge. At the hearing, the ALJ elicited testimony from Robinson, who was represented by counsel; Dr. William Newman, a medical expert; and Glee Ann Kehr, a vocational expert. In light of this testimony and other evidence, the ALJ concluded that Robinson was not disabled and thus not entitled to benefits.

Cook requested a review of the ALJ's decision by the Appeals Council, but the Appeals Council denied the request on August 18, 2000. At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. Robinson now seeks a judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

## II. Factual Background

### A. Robinson's Testimony

At the time of the hearing Robinson was forty-nine years old. She attended school through the twelfth grade. She could read and write.

From 1972 to 1985, Robinson testified that she worked at Wiebolt's, a department store, as a stock clerk handling men's shirts. After being laid off by Wiebolt's, Robinson worked as a cook at a day care center. The cooking position required Robinson to do some lifting. In 1987, Robinson was laid off by the day care center so she sought work at Spiegel, another department store. There, Robinson accepted employment as a stock clerk. She later accepted a position as a merchandise examiner, examining merchandise returned by customers before returning it to stock. Both positions at Spiegel required Robinson to be on her feet all day and occasionally lift merchandise. On December 14, 1994, Robinson's employment at Spiegel ended.

Five months prior to the end of her employment at Spiegel, Robinson sustained injuries to her left hip, leg, and ankle due to an automobile accident. At the hearing, Robinson testified that she still experienced strong and sharp pain in her left ankle on a regular basis, especially when she put weight on the ankle. Rain and cold weather also caused Robinson to experience pain in her left ankle. When Robinson experienced ankle pain, it lasted for a long time, sometimes longer than three hours. From 1998 to 2000, Robinson opined that her ankle pain got worse, despite receiving treatment from and taking medication prescribed by Dr. John McClelland, and despite ambulating with a cane and leg brace. The medications that Robinson took to relieve her ankle pain made her feel drowsy and dizzy; they also gave her an upset stomach.

In addition to the ankle pain, Robinson testified that she suffered from an overactive thyroid gland, which caused her to feel depressed and fatigued and to experience heart palpitations. Robinson claimed that the thyroid condition was getting worse, too. To control the thyroid condition, Robinson took medication and went for radiation and iodine treatment.

In terms of daily activities, Robinson testified that she did not cook or perform household chores such as cleaning or doing laundry, but that she did groom and bathe herself. She would not go grocery shopping, but she would go shopping for personal items with her sister. Robinson did not drive a car. Exercise was limited to lifting her legs.

Robinson could walk about two blocks with a cane, stand in place for about an hour without being in pain, and lift, at most, a half-gallon of milk. She could not sit long, and when she did sit she needed to extend her legs. It was hard for Robinson to bend and stoop because her left leg would not bend. At least in part caused by a lack of activity, Robinson had gained approximately thirty pounds since the automobile accident.

### B. Medical Evidence

The medical evidence begins with several medical reports dated from July 1994 through August 1994. The reports detail the injuries Robinson sustained in the July 15, 1994 automobile accident and the extent of her initial recovery. In general, Robinson had a fractured left acetabulum, tibia, fibula, and talus. She was discharged from the hospital by Dr. McClellan on August 19, 1994, and sent to rehabilitation.

On December 5, 1994, Dr. McClellan reported that Robinson's condition had improved, but Dr. McClellan suggested that ankle surgery might be needed—as he suggested in October 13,

1994 and November 14, 1994 reports. On January 6, 1995, Dr. McClellan again reported improvement in Robinson's condition, particularly her gait. Dr. McClellan also gave Robinson permission to return to work with the restrictions of minimized walking with a cane and sitting on a stool as needed. At the time, Robinson had no hip but occasional ankle pain.

Over the next five months, Robinson continued to complain of ankle pain. Dr. McClellan initially only prescribed medication but then decided that surgery was needed because of nonunion of the left fibula. Dr. McClellan successfully performed surgery on Robinson's fibula in September 1995.

In December 1996, Dr. McClellan noted that Robinson complained of tremors in her hands and legs and experienced occasional ankle pain varying in intensity. Dr. McClellan diagnosed Robinson with mild posttraumatic osteoarthritis of the left ankle, yet indicated that Robinson's range of motion in her left ankle had improved. Also in December, another physician diagnosed Robinson with hyperthyroidism, which caused Robinson's tremors. The physician prescribed medication for the condition. Between January 1997 and May 1997, Robinson continued taking medication for both her ankle pain and hypothyroidism.

Dr. Vlad Badescu examined Robinson on August 5, 1997. At the examination, Robinson complained of hip and ankle pain and watery eyes and mentioned that she was diagnosed with hyperthyroidism. Robinson stated that she could walk outside for one block with a cane but that she normally walked around her residence without using a cane. Dr. Badescu noticed that Robinson's thyroid was about three times the normal size and that Robinson could walk fifty feet with a mildly unstable gait and a limp. Robinson could not squat, walk on her heels or toes, or hop because of ankle pain. Range of motion in Robinson's left hip and ankle was limited, but

hand grip was normal. Robinson could button, zip, and pick up objects from a table without difficulty. X-rays taken at the examination revealed a normal left hip and mild posttraumatic arthritis at the left ankle joint. Dr. Badescu concluded that Robinson had limited range of motion in her left ankle, left hip pain—likely arthritic and secondary to her distorted gait—and hyperthyroidism, controlled with medication.

In August 1997, Dr. Henry Bernet assessed Robinson's residual functional capacity without obtaining a statement from Dr. McClellan regarding Robinson's physical capabilities. Dr. Bernet found Robinson capable of occasionally lifting and carrying twenty pounds, frequently lifting and carrying ten pounds, standing and walking for about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday. Robinson could climb, stoop, kneel, and crawl without limitation, but she could crouch only occasionally.

Dr. McClellan determined that Robinson no longer needed to walk with a cane in October 1997. When Robinson wanted to do a substantial amount of walking, Dr. McClellan recommended that Robinson wear a brace on her left ankle. Dr. McClellan felt that Robinson's condition was improving, although she still experienced pain in her left hip and ankle.

The last medical report in the record is another residual functional capacity assessment dated February 11, 1998. The physician concurred with Dr. Bernet's findings that Robinson was capable of occasionally lifting and carrying twenty pounds, frequently lifting and carrying ten pounds, standing and walking for about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday. However, the physician limited Robinson to occasionally climbing, stooping, kneeling, crouching, and crawling. The physician did not obtain a statement from Dr. McClellan regarding Robinson's physical capabilities before making the assessment.

## C. Medical Expert

Dr. Newman testified at the hearing after reviewing the medical records and listening to Robinson's testimony. Dr. Newman opined that Robinson's medical condition had improved from July 1994 to October 1997, but that prolonged standing could cause Robinson the type of pain she claimed to be experiencing. In that regard, Dr. Newman felt that Robinson could not stand for six hours in an eight-hour workday. Dr. Newman placed no limitation on Robinson's ability to lift and stated that Robinson could carry a ten-pound object one-half of a block. Furthermore, he believed that Robinson could sit for long periods of time on an office chair and would not need any special arrangements while working. In Dr. Newman's opinion, since December 1996, Robinson was capable of performing sedentary work.

On further examination by Robinson's counsel, Dr. Newman acknowledged that Robinson had arthritis in her left ankle and that her left ankle was deformed but not grossly deformed. Dr. Newman also repeated his earlier statement that Robinson had standing and walking limitations.

## D. Vocational Expert

Kehr characterized Robinson's past work as light and unskilled or light and semiskilled with no transferable skills. When asked if a person of Robinson's age, education, and work experience, and a residual functional capacity for sedentary work could find employment with an at will sit or stand option, Kehr responded affirmatively, stating that roughly six to seven thousand unskilled jobs existed in the regional economy. Kehr based her opinion on the census report and her work experience. When asked by Robinson's counsel how the number of available

jobs would be affected if the same person had to sit with her legs extended, Kehr opined that the number of available jobs would be reduced by about eighty percent.

### E. The ALJ's Decision

Based on the medical evidence, the ALJ concluded that Robinson's medical condition had improved since the automobile accident in 1994, and that Robinson was not disabled considering her age, education, past work experience, and residual functional capacity. Specifically, the ALJ found Robinson capable of performing sedentary work.

Before reaching the decision, the ALJ summarized Robinson's testimony—her complaints of pain and of side-effects from medication, her statements regarding treatment for ankle pain and hyperthyroidism, and her discussion on daily activities. The ALJ also commented on Dr. Newman's opinion that Robinson's medical condition had improved since 1997, and on the medical records authored by Dr. McClellan, which revealed the same. Furthermore, the ALJ narrated Dr. Newman's opinion that Robinson could perform sedentary work and remarked that the record did not show that Robinson needed to keep her legs extended while sitting.[2]

Moving on to his evaluation of the evidence, the ALJ stated that Robinson's "subjective complaints and testimony were generally credible but . . . not sufficient to show that [she was] still disabled." (R. at 12.) Because Robinson had posttraumatic arthritis in her left ankle, which restricted her to sedentary work with an at will sit or stand option, the ALJ found Robinson incapable of performing her past work. But because of Kehr's testimony that a significant

---

[2] The intent of the ALJ's remark about no evidence supporting Robinson's purported need to sit with her legs extended is unclear. The remark appears to constitute a conclusion by the ALJ, albeit it falls within the ALJ's narrative section. (R. at 12.)

- 8 -

number of sedentary jobs with an at will sit or stand option existed in the Chicago metropolitan area for a person of Robinson's age, education, and work experience, the ALJ found Robinson not disabled as of October 1, 1997.

Particularly, the ALJ made the following findings:

1. Robinson was found to be disabled on July 15, 1994, and she has not engaged in substantial gainful activity since that date.

2. Robinson currently has severe posttraumatic arthritis as a result of a fractured left ankle.

3. The medical evidence established that Robinson did not have an impairment or combination of impairments that met or equaled the listings.

4. The impairment present as of July 15, 1994, was a fractured left ankle.

5. The medical evidence established that Robinson's medical condition since July 15, 1994, had improved—the fracture healed.

6. The medical improvement related to Robinson's ability to work.

7. Robinson's testimony was essentially credible in describing her problems, but did not establish a continued disability. The medical evidence did not establish a disabling condition.

8. Since October 1, 1997, Robinson has had the residual functional capacity to perform the exertional and nonexertional requirements of sedentary work with an at will sit or stand option.

9. Robinson could no longer perform her past relevant work.

\* \* \*

14. Considering Robinson's age, education, work experience, and residual functional capacity for sedentary work, a significant number of jobs existed in the greater Chicago metropolitan area that Robinson could perform. There were between six and seven thousand such jobs.

15. Robinson was not disabled as of October 1, 1997.

(R. at 13-14.)

### III. Discussion

#### A. Standard of Review

Judicial review of the Commissioner's final decision encompasses an assessment of the factual and legal basis of that decision. *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000); *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999); *Jones v. Shalala*, 10 F.3d 522, 523 (7th Cir. 1993). With regard to the ALJ's factual findings, the court's role is limited: if the ALJ's findings are supported by substantial evidence, then the court must affirm the ALJ's decision. *Allen v. Sullivan*, 977 F.2d 385, 389 (7th Cir. 1992). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. of N.Y., Inc. v. NLRB*, 305 U.S. 197, 229 (1938)). Otherwise stated, it is more than a mere scintilla of the evidence, but less than the greater weight of the evidence. *Id.*; *Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). In determining whether substantial evidence exits, the court cannot reevaluate the facts, reweigh the evidence, or substitute its own judgment for that of the ALJ. *Jones*, 10 F.3d at 523.

The court reviews the ALJ's application of law without deference and without regard to the volume of medical evidence that supports the ALJ's findings. *White*, 167 F.3d at 373. If the ALJ's application of law is not properly grounded, then remand or reversal is warranted. *Cook v.*

*Massanari*, No. 00 C 4157, 2001 WL 755145, at *7 (N.D. Ill. July 2, 2001); *Gavin v. Heckler*, 620 F. Supp. 999, 1000 (N.D. Ill. 1985).

### B.   Credibility Finding

Robinson's first point of contention is the lack of specificity of the ALJ's credibility finding—a purported violation of SSR 96-7p. SSR 96-7p governs the essentials of a credibility finding. It states that, when assessing credibility, the ALJ must "give specific reasons for the weight given to the [claimant's] statements" supported with references to the medical evidence. *Id.* (Conclusory statements such as "'the [claimant's] allegations have been considered'" or "'the [claimant's] allegations are credible'" are not enough). This specificity and detail ensures that the claimant receives a full and fair review of her claim by the administrative law judge. *Id.* Additionally, it ensures that on review the district court understands the weight given by the ALJ to the claimant's statements, and the reasons for that weight. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

In this case, the ALJ's credibility finding flunks the test of SSR 96-7p because it refers to Robinson's credibility in the most general way. Robinson's subjective complaints included strong and sharp ankle pain caused by her left ankle injury and fatigue and depression caused by her hyperthyroidism. Robinson stated that these symptoms of pain, fatigue, and depression were getting worse. (R. at 40.) After narrating all of the evidence presented, acknowledging the existence of objective evidence to support Robinson's ankle and thyroid conditions, the ALJ stated only that Robinson's "subjective complaints and testimony were generally credible but . . . not sufficient to show that [she] [was] disabled." (*Id.* at 12.) In the same paragraph, the ALJ did

- 11 -

explicitly state that he made the credibility finding after assessing Robinson's complaints using the criteria of SSR 96-7p.[3] (*Id.*) But the assessment (or any assessment for that matter) never found its way into the ALJ's decision.

Remaining unknown are the specific reasons for the ALJ's credibility finding, the evidence supporting the ALJ's credibility finding, and the weight, if any, the ALJ gave to Robinson's complaints of pain, fatigue, and depression. On remand, the ALJ must include this information in his decision as required by SSR 96-7p.

This is not to say that the ALJ's credibility finding was incorrect, only that more elaboration is required under SSR 96-7p than that which the ALJ provided in his decision. Until the ALJ provides such elaboration, Robinson has not received an adequate review of her claim by the ALJ, and we cannot conduct meaningful appellate review of the ALJ's credibility finding.

### C. Analysis of the Thyroid Condition

Robinson next attacks the ALJ's analysis, or lack thereof, of evidence relating to Robinson's thyroid condition. Courts have repeatedly held that meaningful judicial review requires the ALJ to articulate at some minimal level his analysis of the evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *Garfield v. Schweiker*, 732 F.2d 605, 609-10 (7th Cir. 1983). A written evaluation of each and every piece of evidence is not required. But a failure to

---

[3] Applying the facts of this case, SSR 96-7p's criteria include Robinson's daily activities; the location, duration, frequency, and intensity of Robinson's symptoms; the factors that precipitate and aggravate Robinson's symptoms; the type of medication Robinson took to relieve her symptoms; the type of treatment Robinson sought to relieve her symptoms; and any other limitations and restrictions attributed to Robinson's symptoms.

address an entire line of evidence falls below the requisite minimal level of articulation. *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

We agree with Robinson that the ALJ failed to adequately address the entire line of medical evidence demonstrating the existence of Robinson's thyroid condition. The line of medical evidence includes reports by different physicians who diagnosed Robinson with hyperthyroidism, some of whom prescribed medication for the condition. (R. at 336-38, 340, 343, 396.) Dr. Badescu, one of the physicians who diagnosed Robinson with hyperthyroidism, noted that Robinson's thyroid was three times the normal size but that no nodules were present on palpation. (*Id.* at 396.) Dr. Badescu also noted that Robinson's hyperthyroidism was controlled with medication. (*Id.* at 398.) A different physician stated that Robinson experienced tremors because of her hyperthyroidism but that the tremors were controlled with medication. (*Id.* at 337.) Furthermore, the medical evidence includes Robinson's statements that her thyroid condition made her depressed and fatigued. (*Id.* at 41.)

The ALJ passed over this entire line of evidence in the analysis and findings sections of the decision—not one of the ALJ's findings even refer to Robinson's thyroid condition. Admittedly, the ALJ mentioned Robinson's thyroid condition twice in the narrative section of the decision, first mentioning that Robinson had a thyroid condition and then mentioning that Robinson received treatment for the condition. (*Id.* at 11.) But narration is not analysis. We are still left pondering what conclusions were drawn by the ALJ from this entire line of medical evidence after reading the ALJ's narrative section.

For that reason, the ALJ's decision cannot be sustained. As the ALJ failed to build an analytical bridge between the evidence and his conclusion, the ALJ's analysis of Robinson's

thyroid condition falls below the mark required for meaningful appellate review. *Zurawski*, 245 F.3d at 887 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

We have not overlooked the Commissioner's assertion that substantial evidence showed that Robinson could perform sedentary work. (Def.'s Mem. Supp. Mot. Summ. J. at 10-11.) That may very well be the case; however, that is not the issue we address here. *Zurawski*, 245 F.3d at 888. The issue we address here involves whether the ALJ adequately articulated his analysis of the medical evidence on Robinson's thyroid condition, not whether substantial evidence supported the ALJ's finding that Robinson was not disabled. A decision must be remanded whenever an administrative law judge fails to build an analytical bridge between the evidence and his conclusion, even if enough evidence exists in the record to support the administrative law judge's disability determination. *Hodes v. Apfel*, 61 F. Supp. 2d 798, 806-07 (N.D. Ill. 1999).

### D. Development of the Medical Record

Robinson's third argument relates to the ALJ's failure to obtain more recent evidence on Robinson's thyroid condition. In support, Robinson cites to *Stambaugh v. Sullivan*, 929 F.2d 292 (7th Cir. 1991); *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990); and *Dozier v. Heckler*, 754 F.2d 274 (8th Cir. 1985).

*Stambaugh* involved a claimant who suffered from chronic alcoholism. The medical record contained evidence of the claimant's physical problems such as pancreatitis and gastrointestinal bleeding. The ALJ analyzed this evidence, but found that the claimant's

problems with alcohol did not prevent him from performing his past work. The ALJ made this determination without completing the evaluation form required by 20 C.F.R. § 404.1520a and without ordering a psychological examination. *Stambaugh*, 929 F.2d at 296. On appeal, the Seventh Circuit held that the ALJ erred by not completing the required evaluation form and by not ordering a psychological examination, considering the substantial evidence of chronic alcoholism. *Id.* The case was remanded so that the ALJ could obtain evidence on whether the claimant suffered from a mental impairment.

In *Lucas*, the claimant suffered from seizures. The medical record revealed numerous trips to the emergency room by the claimant for treatment, and it contained reports from several physicians, many of whom noted that the claimant's medicine levels were below therapeutic range, and some of whom noted that the claimant did not take her medication as prescribed. Concluding that the claimant's seizures were controllable with medication, the ALJ held that the claimant did not suffer from a severe impairment. *Lucas*, 918 F.2d at 1571-72. On appeal, the Eleventh Circuit held that the ALJ erred by not ordering an examination to ascertain whether the claimant's subtherapeutic medicine levels were caused by her failure to take medication as prescribed, or by her individual idiosyncrasy in absorption of the medicine. *Id.* at 1572. The Eleventh Circuit remanded the case to the ALJ to conduct the necessary examinations.

In *Dozier*, the claimant suffered from migraine headaches. The medical record included scant notes from the treating physician who diagnosed migraine headaches, and it included an internist's physical and x-ray examination. After finding that the objective evidence did not support the claimant's symptoms, the ALJ determined that the claimant did not have a severe impairment. *Dozier*, 754 F.2d at 275-76. On appeal, the Eighth Circuit stated that the claimant's

medical sources did not provide sufficient medical evidence and ordered the ALJ to have neurological, psychiatric, psychological, and orthopedic examinations performed. *Id.* at 276.

*Stambaugh*, *Lucas*, and *Dozier* stand for the proposition that the ALJ must make an informed decision. When evidence suggests the existence of an impairment that is inadequately addressed in the medical record, *Stambaugh*, *Lucas*, and *Dozier* hold that the ALJ has a duty to explore and investigate that impairment through expert examinations or otherwise in order to make an informed decision. *Stambaugh*, 929 F.2d at 295-96; *Lucas*, 918 F.2d at 1572; *Dozier*, 754 F.2d at 276.

Here, we are convinced that Robinson's thyroid condition has been adequately addressed in the medical record and that sufficient evidence exists in the medical record for the ALJ to make an informed decision on remand. Plainly, this is a very different case than *Stambaugh*, *Lucas*, and *Dozier*. The instant medical record contains a consultative examination and several other reports pertaining to Robinson's thyroid condition. (R. at 336-38, 340, 343, 396.) Moreover, Robinson has not specifically challenged the accuracy or adequacy of any of this medical evidence in her briefs.

More recent information could be obtained. The medical evidence is dated 1996 and 1997 and the hearing before the ALJ took place in 1999. But without an assertion by Robinson, supported with facts, that new information is necessary for the ALJ to make an informed decision, we find no basis for ordering the ALJ to obtain more information.[4] *Haley v.*

---

[4] Robinson's general statement that her thyroid condition was getting worse is insufficient, by itself, to show that the ALJ erred by not obtaining more recent medical evidence. (R. at 40.) Several questions later, when asked what her thyroid condition kept her from doing, Robinson responded, "I don't really know what it keeps me from doing." (*Id.*) Robinson then
(continued...)

*Massanari*, 258 F.3d 742, 749-50 (8th Cir. 2001); *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994).

### E. The ALJ's Hypothetical Question

Robinson's final legal argument deals with the adequacy of the hypothetical posed to the vocational expert by the ALJ. A hypothetical question is adequate if it fully sets forth the claimant's impairments to the extent supported by the medical evidence in the record, as determined by the ALJ.[5] *Ehrhart v. Secretary of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992); *Hodes*, 61 F. Supp. 2d at 809-10; *Brown v. Chater*, 913 F. Supp. 1210, 1215 (N.D. Ill. 1996) (quoting *Herron*, 19 F.3d at 337). In other words, the hypothetical question needs to reflect the claimant's limitations. *Cass v. Shalala*, 8 F.3d 552, 556 (7th Cir. 1993).

In light of the ambiguity surrounding the ALJ's credibility finding and assessment of Robinson's thyroid condition, we refrain from making a decision on the adequacy or inadequacy of the ALJ's hypothetical question. However, after making a credibility finding in accordance with SSR 96-7p and properly analyzing Robinson's thyroid condition on remand, the ALJ must consider whether the hypothetical question he posed to the vocational expert at the 1999 hearing

---

[4](...continued)
went on to list her symptoms.

[5] A hypothetical question is not necessarily rendered inadequate if an administrative law judge fails to include all of the details of the claimant's impairments in the hypothetical question; Proof that the vocational expert reviewed the medical evidence prior to the hearing saves the adequacy of the hypothetical question. *Herron*, 19 F.3d at 337; *Cass*, 8 F.3d at 556; *Inghram v. Massanari*, No. 98 C 6196, 2001 WL 965504, at *7 (N.D. Ill. Aug. 21, 2001); *Brown*, 913 F. Supp. at 1216 n.5. In this case, however, the vocational expert did not testify that she reviewed the medical evidence before giving her opinion. (R. at 52-55.)

accurately reflected Robinson's limitations. If the ALJ makes a decision on remand that Robinson has limitations that were not included in the hypothetical question, then the ALJ must reconsider his disability determination without reliance on the vocational expert's answer to the hypothetical question. *See Thomas v. Apfel*, No. 99-2067-JWL, 1999 WL 1423073, at *7-8 (D. Kan. Dec. 14, 1999).

### F. Substantial Evidence

Lastly, Robinson contends that the ALJ's ultimate finding of not disabled lacked substantial evidence. Because remand is necessary to remedy inadequacies with respect to the ALJ's credibility finding and assessment of Robinson's thyroid condition, we do not address this argument.

### IV. Conclusion

For the reasons stated, this Court remands the case to the ALJ to conduct further proceedings consistent with this decision.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

**Dated:** November 21, 2001.

Copies have been mailed to:

| | |
|---|---|
| ROBERT C. KIELIAN, Esq.<br>M. JACQUELINE WALTHER, Esq.<br>Kielian and Walther<br>33 West Jackson Boulevard<br>Suite 201<br>Chicago, IL 60604 | JOAN LASER<br>Assistant U.S. Attorney<br>219 South Dearborn Street<br>Suite 500<br>Chicago, IL 60604<br><br>CHARLES R. GOLDSTEIN<br>Assistant Regional Counsel<br>200 West Adams Street<br>30th Floor<br>Chicago, IL 60606 |
| Attorneys for Plaintiff | Attorneys for Defendant |